******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# GREENWICH RETAIL, LLC *v.* TOWN OF GREENWICH
## (SC 21167)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

Pursuant to statute ((Rev. to 2019) § 12-63c (a) and (d)), a municipal tax assessor, in appraising real property used primarily for the purpose of generating rental income, is authorized to require the owner of such property to submit to the assessor certain rental income and expense information relating to the property "on a form provided by the assessor," and the property owner's failure to do so "shall be subject to a penalty equal to a ten per cent increase in the assessed value of such property . . . ."

The plaintiff property owner had appealed to the trial court from the decision of the defendant town's board of assessment appeals, which upheld the imposition of a penalty on the plaintiff, pursuant to § 12-63c (d), for the plaintiff's failure to timely submit a form, prescribed by the town's assessor, containing income and expense information related to the plaintiff's rental income producing property located in the town. The assessor had mailed, in April 2020, to the plaintiff's last known address, both a demand for the submission of income and expense information and the form on which the information was to be entered. The plaintiff had changed its address in 2016, but there was no evidence that the plaintiff had informed the assessor directly about this change at that time. The plaintiff ultimately did not receive the April 2020 mailing. In June 2020, however, the assessor sent a tax bill to the plaintiff's last known address, and the business then located at that address forwarded the bill to the plaintiff's new address. At that point, the plaintiff, through its agent, emailed the assessor and asked the assessor to update the plaintiff's address. On August 3, 2020, the assessor mass mailed a reminder notice to property owners who had failed to comply with its earlier April 2020 demand, including the plaintiff at its new address. The remainder notice did not include the form the assessor was seeking but directed property owners to retrieve the form from the town's website. The plaintiff's agent did not open the mail containing the reminder notice until August 24, 2020, seven days after the August 17, 2020 deadline for submission of the form. The trial court rendered judgment for the town, and the plaintiff appealed to the Appellate Court, which affirmed the trial court's judgment, concluding that the assessor had satisfied the requirements of § 12-63c by mailing the demand and form to the plaintiff's last known address and that the statute did not require that the plaintiff actually receive the form. The plaintiff, on the granting of certification, appealed to this court, claiming that the Appellate Court had incorrectly determined that the assessor had satisfied the requirements of § 12-63c because the phrase "on a form provided by the assessor" required actual receipt of the form by the property owner. *Held*:

The Appellate Court correctly determined that the assessor had satisfied the requirements set forth in §12-63c when, in April 2020, it mailed the form to the plaintiff's last known address.

After reviewing the relevant statutory language, related statutes, and the legislative history of §12-63c, this court concluded that, when a municipal tax assessor mails the form for rental income and expense information to the last known address provided by the property owner, the assessor fulfills his or her obligation pursuant to §12-63c (a), as the most plausible construction of the term "provided" in the statute is that the assessor must make the form available to the property owner by reasonable means, and the statute did not require actual receipt of the form by the property owner.

Accordingly, the assessor's April 2020 mailing of both a demand for the submission of income and expense information and the form to the plaintiff's last known address discharged the assessor's duty to provide the plaintiff with notice of the plaintiff's obligation to submit the form with the requested income and expense information by the prescribed deadline.

Moreover, mailing the form to a property owner's last known address satisfied principles of fundamental fairness, as well as the statute's inherent availability requirements, and it is the burden of the property owner, which is in the best position to know its current address and to notify the municipality of any changes, to ensure that the municipality is apprised of the property owner's current mailing address.

(*One justice concurring in part and dissenting in part*)

Argued May 11—officially released August 18, 2026

*Procedural History*

Appeal from the decision of the defendant's board of assessment appeals upholding the imposition of a penalty on the plaintiff for failing to timely submit a certain form, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Kenneth B. Povodator*, judge trial referee; judgment for the defendant, from which the plaintiff appealed to the Appellate Court, *Moll*, *Suarez* and *Prescott*, *Js.*, which affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed*.

*James R. Fogarty*, with whom was *Stephen P. Fogerty*, for the appellant (plaintiff).

*Owen T. Weaver*, with whom, on the brief, were *Jeremy A. Gustafson* and *Barbara M. Schellenberg*, for the appellee (defendant).

*Opinion*

ALEXANDER, J. The sole issue in this certified appeal is whether General Statutes (Rev. to 2019) § 12-63c (a),[1] which requires a municipal tax assessor to provide owners of real property used primarily for producing rental income with a form on which to submit their property's rental income and expense information (form), is satisfied when that form is mailed to the property owner's last known address but not actually received by the property owner. The plaintiff, Greenwich Retail, LLC, appeals from the judgment of the Appellate Court affirming the trial court's judgment rendered in this tax appeal in favor of the defendant, the town of Greenwich. We conclude that § 12-63c (a) is satisfied when the assessor mails the form to the property owner's last known address, regardless of receipt. Accordingly, we affirm the judgment of the Appellate Court.

The following facts and procedural history are relevant to this appeal. Under § 12-63c (a), a municipal tax assessor

---

[1]General Statutes (Rev. to 2019) § 12-63c provides in relevant part: "(a) In determining the present true and actual value in any town of real property used primarily for purposes of producing rental income, the assessor . . . may require in the conduct of any appraisal of such property . . . that the owner of such property annually submit to the assessor not later than the first day of June, on a form provided by the assessor not later than forty-five days before said first day of June, the best available information disclosing the actual rental and rental-related income and operating expenses applicable to such property. . . .

\* \* \*

"(d) Any owner of such real property required to submit information to the assessor in accordance with subsection (a) of this section for any assessment year, who fails to submit such information as required under said subsection (a) or who submits information in incomplete or false form with intent to defraud, shall be subject to a penalty equal to a ten per cent increase in the assessed value of such property for such assessment year. . . ."

In 2023, the legislature amended § 12-63c. See Public Acts 2023, No. 23-152, § 1. Unless otherwise indicated, all references to § 12-63c in this opinion are to the 2019 revision of the statute.

is authorized to require owners of real property used primarily for producing rental income to "submit to the assessor . . . the best available information disclosing the actual rental and rental-related income and operating expenses applicable to such property." The plaintiff owns real property located at 310 Greenwich Avenue in Greenwich (property), which is subject to § 12-63c (a). Empire State Realty Trust, Inc. (Empire), a real estate investment company located in New York City, administers and manages the plaintiff's property.[2] As part of Empire's responsibilities, it handles the plaintiff's tax matters, including the preparation and delivery of income and expense information to the defendant.

On or about April 15, 2020, the defendant's assessor (assessor) bulk mailed demands, along with forms, to the owners of 769 properties requesting the submission of annual income and expense information.[3] The deadline to comply with the demand and to avoid the imposition of a statutory penalty; see General Statutes (Rev. to 2019) § 12-63c (d); was August 17, 2020.[4] In accordance with the defendant's standard practice and procedure, the assessor mailed the demand and the form for each property to the address listed in the instrument reflecting title ownership as recorded in the defendant's land records. With respect to the plaintiff's property, that address was a former address of Empire: 60 East 42nd Street, New York, New York. At some point in 2016,

---

[2] We note that Empire administers and manages the plaintiff's property through its subsidiary, ESRT Management TRS, LLC. See *Greenwich Retail, LLC* v. *Greenwich*, 233 Conn. App. 78, 81, 340 A.3d 463 (2025).

[3] The defendant retained Quality Data Service, Inc. (Quality), to provide printing and mailing services for its assessor. A mailing specialist from Quality addressed and mailed the demand and form to the owners of the applicable properties.

[4] The regular statutory deadline for property owners to submit income and expense information to the assessor was June 1, 2020. See General Statutes (Rev. to 2019) § 12-63c (a). In response to the COVID-19 pandemic, however, Governor Ned Lamont issued an executive order that extended the deadline for filing income and expense information to August 15, 2020. See Executive Order No. 7S, § 10 (April 1, 2020). Because August 15, 2020, fell on a weekend, the assessor made the actual deadline August 17, 2020.

however, Empire relocated to a different address: 111 West 33rd Street, New York, New York.[5] Because the assessor's mailing was sent to Empire's previous business address, the plaintiff never received or responded to the April 2020 demand.

In the summer of 2020, the assessor mailed a real estate tax bill for the property to Empire's previous address. The tax bill was received by the business entity occupying that address, which forwarded it to Empire. Prompted by the receipt of this tax bill, on or about June 29, 2020, an Empire employee who worked in its accounts payable department sent an email to the assessor requesting that the mailing address on file for the property be updated to 111 West 33rd Street, New York, New York. The assessor subsequently amended the mailing address in accordance with that request.

Although she had no statutory obligation to do so, on August 3, 2020, the assessor mass mailed a reminder notice for the submission of income and expense information to property owners who had failed to comply with the April 2020 demand.[6] The reminder notice did not include a form but directed property owners to retrieve it from the defendant's website. For the plaintiff's property, the reminder notice was mailed to 111 West 33rd Street, New York, New York, as requested in the June 29, 2020

[5]At trial, Rodney Gomes, the senior vice president and chief controller of Empire, testified that Empire had relocated in 2016 and sent notice of its address change to its vendors via a mass mailing. The trial court, however, found no documentary evidence to corroborate this assertion. Evidence was also presented that, from January 2017 to July 2021, the plaintiff paid its real property taxes to the defendant by check. Each of these checks listed the plaintiff's address as 111 West 33rd Street, New York, New York. The trial court "reject[ed] the contention that the address listed on a check paying a tax bill is a form of notice to town officials of the proper address to which notices and official documents are to be sent," observing that "[t]he address used for financial transactions (accounts payable) may not necessarily correlate to the address of an administrative property manager."

[6]Of the 769 property owners to which it had sent the April 2020 demand and form, the assessor sent 465 a reminder notice. The assessor testified at trial that "a majority of taxpayers who had been requested to provide this information did not do so."

email. Empire personnel did not, however, open the reminder notice until August 24, 2020, seven days after the August 17, 2020 deadline for submission of the form. According to the plaintiff, the delay in opening the letter was a consequence of the COVID-19 pandemic. Between April and September 2020, the business operations of Empire and the plaintiff were affected by COVID-19; specifically, that there was limited staff working in the office because most employees worked remotely. Empire personnel subsequently completed the form and sent it to the assessor on or about September 1, 2020.

On January 28, 2021, the assessor, pursuant to § 12-63c (d), imposed a 10 percent penalty on the assessed value of the plaintiff's property for the plaintiff's failure to timely submit its income and expense information. The plaintiff appealed from the assessor's imposition of the penalty to the defendant's board of assessment appeals (board), which upheld the penalty.

The plaintiff then filed this tax appeal from the board's decision in the Superior Court, claiming that "the statutory requirements for imposition of the penalty [had] not been satisfied." Specifically, the plaintiff claimed that, because it did not receive notice of the demand for income and expense information until August 24, 2020, which was after the deadline for submission, it could not be penalized for noncompliance. The plaintiff contended that the obligation to submit income and expense information is triggered only upon a property owner's actual receipt of the form.

After a one day trial, the trial court rendered judgment in favor of the defendant. The court held that the timely mailing of the April 2020 demand and form to Empire's former, but last known, address satisfied the assessor's obligation under § 12-63c (a). The court concluded that it is the responsibility of the property owner to ensure that the assessor has the correct address for tax matters and, in this case, found that "the actual failure of the [plaintiff] to receive the demand and form was due to its

failure to take reasonable measures to ensure that the assessor had an accurate, up-to-date mailing address."

The plaintiff appealed from the trial court's judgment to the Appellate Court. See *Greenwich Retail, LLC* v. *Greenwich*, 233 Conn. App. 78, 80, 340 A.3d 463 (2025). The plaintiff claimed that the trial court had incorrectly interpreted the language of §12-63c (a), namely, the requirement that the property owner submit income and expense information to the assessor "on a form *provided* by the assessor . . . ." (Emphasis added.) General Statutes (Rev. to 2019) §12-63c (a); see *Greenwich Retail, LLC* v. *Greenwich*, supra, 80–81. The Appellate Court concluded that the term "provided," as used in the statute, plainly and unambiguously means to "be made available . . . ." *Greenwich Retail, LLC* v. *Greenwich*, supra, 96. It declined to infer that the legislature "intended to impose specific requirements on assessors with respect to *how* they must make the . . . forms available to property owners" and stated that "it is not plausible . . . that the term 'provided' encompasses the distinct concepts of actual delivery and/or receipt." (Emphasis in original.) Id., 89. The Appellate Court thus concluded that the mailing of the April 2020 demand and form by the assessor satisfied the requirements of §12-63c (a). Id., 103. Accordingly, the Appellate Court affirmed the trial court's judgment; id.; and this certified appeal followed.[7]

On appeal, the plaintiff renews its claim that the phrase "on a form provided by the assessor" in §12-63c (a) requires that the form be actually received by the property owner. The plaintiff argues that actual receipt is required for a property owner to be on notice of the demand for income and expense information and to be

---

[7]We granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that the defendant had satisfied its obligation under . . . §12-63c (a) to provide the plaintiff with the form for calculating rental income and operating expenses when the defendant timely mailed the form to the plaintiff's last known address but the plaintiff did not actually receive it?" *Greenwich Retail, LLC* v. *Greenwich*, 353 Conn. 913, 344 A.3d 154 (2025).

able to comply with the deadline in order to avoid the imposition of the statutory penalty. We disagree.

Whether the phrase "on a form provided by the assessor" requires a municipal tax assessor to ensure actual receipt of the form is an issue of statutory interpretation over which we exercise plenary review. See, e.g., *Rutter* v. *Janis*, 334 Conn. 722, 730, 224 A.3d 525 (2020). In matters of statutory interpretation, we are guided by General Statutes § 1-2z; see, e.g., *State* v. *Moore*, 352 Conn. 912, 919, 336 A.3d 1222 (2025); which "directs us to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *PPC Realty, LLC* v. *Hartford*, 350 Conn. 347, 353, 324 A.3d 780 (2024). "It is a basic tenet of statutory construction that [w]e construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation." (Internal quotation marks omitted.) *Rubin* v. *Brodie*, 228 Conn. App. 617, 637, 325 A.3d 1096 (2024).

General Statutes (Rev. to 2019) § 12-63c (a) provides in relevant part: "In determining the present true and actual value in any town of real property used primarily for purposes of producing rental income, the assessor . . . may require in the conduct of any appraisal of such property . . . that the owner of such property annually submit to the assessor not later than the first day of June, *on a form provided by the assessor* not later than forty-five days before said first day of June, the best available information disclosing the actual rental and rental-related income and operating expenses applicable to such property. . . ." (Emphasis added.) The statute does not define the relevant term "provided." We therefore "begin with the assumption that the legislature intended the word to carry its ordinary meaning, as evidenced in dictionaries in print at the time the statute was enacted."

(Internal quotation marks omitted.) *State* v. *Enrrique H.*, 353 Conn. 823, 830, 347 A.3d 1156 (2025); see General Statutes § 1-1 (a).

The legislature added the relevant language to § 12-63c in 2000. See Public Acts 2000, No. 00-215, § 2. We turn to dictionaries contemporary to the enactment for definitions of the term "provide," which is the root word of "provided." See *State* v. *Enrrique H.*, supra, 353 Conn. 830. At that time, Merriam-Webster's Collegiate Dictionary defined "provide" in relevant part as "to supply or make available . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 1995) p. 940. It further defined "supply" in relevant part as "to make available for use . . . to furnish"; id., p. 1184; and "available" in relevant part as "present or ready for immediate use . . . ." Id., p. 79. Oxford American Dictionary and Language Guide similarly defined "provide" in relevant part as "supply; furnish . . . ." Oxford American Dictionary and Language Guide (1999) p. 802 (Oxford Dictionary); see also Random House Unabridged Dictionary (2d Ed. 1993) p. 1556 (defining "provide" in relevant part as "to make available; furnish"). Oxford Dictionary defined "furnish" in relevant part as "provide . . . with all necessary contents" and "cause to have possession or use of." Oxford Dictionary, supra, p. 393.

Because the definitions of "provide" and its relevant synonyms reasonably can be interpreted as either making available, i.e., not requiring actual receipt, or causing one to have possession of, i.e., requiring actual receipt, we conclude that the statute is ambiguous as applied in this context. Although the Appellate Court rejected the actual receipt construction as unavailing, one Superior Court decision has construed § 12-63c (a) consistently with the plaintiff's interpretation of the statute, concluding that the "requirement [in § 12-63c (a)] that income and expense data must be submitted 'on a form provided by the assessor' means that the income and expense form must be actually received by the property owner." *Baker Middletown, LLC* v. *Middletown*, Docket No.

HHB-CV-22-6073647-S, 2023 WL 6307074, *4 (Conn. Super. September 22, 2023).

We, therefore, view §12-63c (a) in the context of related statutes and conclude, as did the Appellate Court, that doing so supports the defendant's argument that the statute should be read to provide flexibility in how the assessor provides the form without a requirement of proof of actual receipt by the property owner. See *Greenwich Retail, LLC* v. *Greenwich*, supra, 233 Conn. App. 90−91. Section 12-63c (a) is part of chapter 203 of the General Statutes, which governs property tax assessment. Throughout chapter 203, the legislature, in a variety of circumstances, specifies explicitly when and how an assessor is required to provide a document in a specific manner. See, e.g., General Statutes §12-53 (c) (1) ("The assessor *shall give notice in writing* to the owner . . . of the time and place of such audit with respect to such property. *Such notice shall be placed in the hands of such person or left at such person's usual place of residence or business or shall be sent to such person by registered or certified mail at the last-known place of residence or business* . . . ." (Emphasis added.)); General Statutes §12-53 (d) ("the assessor . . . shall . . . *give such person notice in writing by mailing the* [*declaration*]*, postage prepaid, to such person's last-known address*" (emphasis added)). The legislature also expressly specifies when receipt or delivery is required; see, e.g., General Statutes §12-49 ("[t]he assessors in each town shall require each person giving in a tax list to *sign, date and deliver* to them a statement upon such list in the following form" (emphasis added)); General Statutes §12-53 (f) ("[u]pon *receipt of notice* from the assessor or board of assessors" (emphasis added)); General Statutes §12-80c (b) ("any municipal tax collector may *mail or deliver* . . . a first installment of a tax bill to a taxpayer" (emphasis added)); including in §12-63c itself. See, e.g., General Statutes (Rev. to 2019) 12-63c (d) ("[s]uch assessor or board may waive such penalty upon *receipt* of such information" (emphasis added)); see also General Statutes (Rev. to 2025) §12-63c (d) (1) (B) ("[u]pon *receipt* of any such certificate of correction,

the tax collector of the town shall apply the mill rate for the current fiscal year and, if such certificate of correction is received after the normal billing date, not later than thirty days after such receipt, *mail or hand deliver* a bill to such owner" (emphasis added)).

Most relevant to the present case, the explicit requirement of "receipt" in other related statutes is persuasive evidence that the legislature did not intend to create such a requirement in § 12-63c (a) by using the phrase "on a form provided by the assessor . . . ." See, e.g., *Clark* v. *Waterford, Cohanzie Fire Dept.*, 346 Conn. 711, 733, 295 A.3d 889 (2023). Indeed, "[w]hen a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed. . . . That tenet of statutory construction is well grounded because [t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or [nonaction] will have [on] any one of them." (Internal quotation marks omitted.) *William W. Backus Hospital* v. *Stonington*, 349 Conn. 713, 726–27, 321 A.3d 1117 (2024).

The plaintiff nevertheless relies on our decision in *Seramonte Associates, LLC* v. *Hamden*, 345 Conn. 76, 282 A.3d 1253 (2022), to argue that the term "provided" unambiguously includes the requirement of receipt. We disagree. In *Seramonte Associates, LLC*, we interpreted the language in § 12-63c (a) that requires a property owner to "submit" income and expense information to a municipal tax assessor by the first day of June. Id., 78. We concluded that "the word 'submit' unambiguously requires that the income and expense information be *received* by the assessor by June 1." (Emphasis added.) Id., 88. Shortly following the release of *Seramonte Associates, LLC*, the legislature amended § 12-63c to add subsection (e), which provides in relevant part: "Any income and expense disclosure form described in subsection (a) of this section received by the assessor to which such form is due that is in an envelope bearing a postmark . . .

showing a date within the allowed filing period, shall not be deemed delinquent." General Statutes (Rev. to 2025) § 12-63c (e); see Public Acts 2023, No. 23-152, § 1. Under this amendment, the form is now considered submitted upon postmark, so long as it is still *received* by the assessor. See *Greenwich Retail, LLC* v. *Greenwich*, supra, 233 Conn. App. 90 n.11. The legislature, however, did not alter the language at issue in this appeal to include a receipt requirement. In light of the subsequent amendment to the statute, we disagree with the plaintiff's argument that it would be inconsistent to require a property owner to ensure that an assessor receives the form but not require an assessor to do the same. In other words, because the legislature amended the meaning of the term "submit," we are unpersuaded that there now must be symmetry between our construction of the term "provide" and our interpretation of "submit" in *Seramonte Associates, LLC*. A legislative act that amends one part of a statute but does not change similarly worded portions of the same statute is presumed to be limited in scope only to the amended aspect of the statute. See, e.g., *Commissioner of Public Safety* v. *Freedom of Information Commission*, 137 Conn. App. 307, 317–18, 48 A.3d 694 (2012), aff'd, 312 Conn. 513, 93 A.3d 1142 (2014).

Finally, because the term "provided" in § 12-63c (a) is susceptible to more than one reasonable interpretation, we turn to an examination of extratextual sources, specifically, the legislative history, to resolve its ambiguity. See, e.g., *Wilton Campus 1691, LLC* v. *Wilton*, 339 Conn. 157, 172–73, 260 A.3d 464 (2021). Prior to its amendment in 2000, General Statutes (Rev. to 1999) § 12-63c (a) provided that a property owner shall submit income and expense information to the assessor "on a form *prescribed* by the Secretary of the Office of Policy and Management or approved in accordance with section 12-61 . . . ." (Emphasis added.) The legislative history of this predecessor provision, No. 00-215 of the 2000 Public Acts (P.A. 00-215), indicates that the term "prescribed" originally had contemplated that the Office of Policy and Management (OPM) be responsible

for "develop[ing] a standardized form [that] the town is required to use." Conn. Joint Standing Committee Hearings, Finance, Revenue and Bonding, Pt. 3, 1984 Sess., p. 914, remarks of Frederick Chumura. In P.A. 00-215, the legislature eliminated the requirement that OPM prescribe the form and, in its place, added the language that the form be "provided by the assessor . . . ." P.A. 00-215, § 2. Although there is no statement by any legislator explaining the purpose of the amendment, during a public hearing before the Finance, Revenue, and Bonding Committee on the bill later enacted as P.A. 00-215, Michael Cicchetti, deputy secretary of OPM, explained that it "take[s] OPM out of the business of prescribing certain forms that taxpayers use to report certain information to assessors . . . . We believe the design of these forms should be within the purview of the local assessors who are better able to determine their collection needs than OPM is." Conn. Joint Standing Committee Hearings, Finance, Revenue and Bonding, Pt. 3, 2000 Sess., p. 793. This testimony does not speak to the process by which the assessor must disseminate the forms but indicates only that the legislature intended to allow for local control of their design and content. The legislative history, therefore, suggests that the legislature may have intended to use the term "provided" as a synonym for prescribed, focusing on who is responsible for the content of the forms and not on how the property owners acquire them. Certainly, there is nothing in the legislative history to suggest that the choice to use the phrase "provided by" was meant to require the assessor to ensure that the property owner actually receives the form.

"When statutory language, even if ambiguous for purposes of § 1-2z, provides greater support for an interpretation of the statute than does the legislative history, we must yield to the implications of the statutory language, particularly when the legislative history is more general in nature and does not furnish any evidence of legislative intent with respect to the specific point of law at issue." *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 346

Conn. 728. Because the legislative history of § 12-63c (a) is not strong and the statutory scheme reveals that the legislature is precise when it intends to require receipt, we conclude that the most plausible construction of the term "provided" in § 12-63c (a) is that the assessor must make the form available to the property owner by reasonable means but does not require evidence of actual receipt of the form by the property owner before an assessor may impose the statutory penalty.

There is one final issue we must address regarding this interpretation. The plaintiff argues that, because § 12-63c (a) authorizes but does not mandate a municipal tax assessor to request the submission of income and expense information annually, the mere availability of the form is insufficient to ensure that a property owner has been notified that the assessor has elected to request the submission of income and expense information in a given year. In discussing the assessor's obligations under the statute at oral argument before this court, the defendant's counsel conceded that, if the assessor placed the form on a counter of an office in a municipal building, and did nothing more, the requirement of availability would not be met because the property owner would not know that it had to submit the form in that particular tax year. In other words, the defendant agrees that, as part of the assessor's statutory obligation to provide the required form, the assessor must give notice that the property owner is required to submit that form in that particular year.

Although the facts of the present case do not require us to determine all permutations of an assessor's obligation under § 12-63c (a), it is clear to us that the statute must be read in the context of the common-law right to fundamental fairness that is applicable to a municipality's administrative proceedings; see, e.g., *Grimes* v. *Conservation Commission*, 243 Conn. 266, 273 and n.11, 703 A.2d 101 (1997); *Megin* v. *Zoning Board of Appeals*, 106 Conn. App. 602, 607 n.6, 942 A.2d 511, cert. denied, 289 Conn. 901, 957 A.2d 871 (2008); along

with any applicable constitutional due process protections. A mailing to a property owner's last known address would satisfy the notice considerations of fundamental fairness, as well as the statute's inherent availability requirements.[8] See *D'Occhio* v. *Connecticut Real Estate Commission*, 189 Conn. 162, 172, 455 A.2d 833 (1983).

Such notice was provided in the present case, as the assessor mailed the demand letter in April 2020. We agree with the trial court that the fact that the plaintiff's mailing address turned out to be outdated is, in this case, the root of the problem. It is the burden of the property owner—which is in the best position to know its current address and to notify the municipality of any changes—to ensure that the municipality is apprised of its current mailing address. Thus, we leave to another day the extent to which other methods of providing the form, and notice that submission of the form is required, would satisfy § 12-63c (a), when read in light of the fundamental fairness requirement.

We conclude that, when a municipal tax assessor mails the form to the last known address provided by the property owner, the assessor has fulfilled its obligations under § 12-63c (a). In the present case, in April 2020, the assessor mailed both a demand requesting the submission of income and expense information and the form to the plaintiff's last known address. This mailing discharged the assessor's obligation to provide the plaintiff with both notice of its obligation to submit

---

[8]The concurrence and dissent concludes that the assessor's April 2020 mailing of the demand and form to the plaintiff's former, but last known address, did not satisfy considerations of fundamental fairness with respect to notice because no "provision of law . . . required the plaintiff to maintain a current mailing address with the assessor for purposes of receiving requests under § 12-63c." We disagree.

Throughout the taxation statutory scheme, the assessor is obligated to mail various notices, forms, and bills to a property owner's last known address. See, e.g., General Statutes § 12-53 (d); General Statutes § 12-55 (b); General Statutes § 12-60; General Statutes § 12-89 (b); General Statutes § 12-115; General Statutes § 12-155 (a). Accordingly, a property owner has ample notice of the continuing obligation to update the municipality with any change in address.

income and expense information and the form itself. Accordingly, the Appellate Court correctly determined that the defendant complied with the requirements set forth in § 12-63c (a).

The judgment of the Appellate Court is affirmed.

In this opinion MULLINS, C. J., and McDONALD, D'AURIA, ECKER and BRIGHT, Js., concurred.